UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:10-CV-00005-JHM**

**AUTO-OWNERS INSURANCE COMPANY**                    **PLAINTIFF**

**V.**

**ROY VARBLE, et al.**                     **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment [DN 26] and Defendant Edward H. Varble's Cross Motion for Summary Judgment [DN 28].[1] Fully briefed, this matter is ripe for decision. For the following reasons, the Court **GRANTS** the Plaintiff's Motion for Summary Judgment and **DENIES** the Defendant's Motion for Summary Judgment.

### I. BACKGROUND

From 2005 to 2008, Roy and Phyllis Varble, Nellie Carraway (Phyllis's sister), and Randy Sands (Phyllis's son) lived together in a house in Owensboro, Kentucky. Mr. Sands had moved in with his mother, step-father, and aunt in 2005 to help care for them. In 2008, the four family members all moved to Montgomery, Illinois, where they resided for approximately six months before deciding to buy property together in a retirement community in Ajijic, Mexico.

On January 7, 2009, the Varbles, Ms. Carraway, and Mr. Sands were driving from Salt Lake City, Utah to Ajijic, Mexico. The family was driving Mr. Sands 2003 Ford Ranger and a moving truck that contained all of their belongings. Mr. Sands was driving the moving truck, which

---

[1] Roy Varble was declared incompetent and his guardian Edward H. Varble was substituted as Defendant on May 13, 2010 [DN 18].

was towing the Roy and Phyllis Varbles' 2007 Chevrolet Uplander on a trailer. Ms. Carraway was riding with him. Phyllis was driving Mr. Sands' Ranger and Roy was riding with her. Phyllis was driving the Ranger and not her own Uplander because she felt that the Ranger's smaller size made it easier to handle than the Uplander and because she felt that the Ranger would get better gas mileage. In Zavala County, Texas, Phyllis was following Mr. Sands when the Ranger went slightly off the road. In an attempt to get back on the road, Phyllis over-corrected causing the Ranger to flip over. Phyllis died as a result of the accident and Roy suffered serious bodily injury.

Mr. Sands had car insurance on the Ranger through Progressive Insurance Company. His liability coverage for bodily injury was $25,000. The Varbles had their Uplander insured through Auto-Owners Insurance Company. Their policy included uninsured and underinsured motorist (UIM) bodily injury coverage with limits of $100,000 per person and $300,000 per occurrence. Progressive paid Roy the $25,000 policy limit for his injuries, as stated in its policy with Mr. Sands. Although it is unclear, it appears that Roy then made a claim for coverage under the UIM provision in the Auto-Owners insurance policy on the Uplander. Auto-Owners filed this suit seeking a declaratory judgment that neither Roy Varble nor the Estate of Phyllis Varble was entitled to relief under the UIM coverage in the Auto-Owners policy.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

## III. DISCUSSION

Auto-Owners has filed a motion for summary judgment contending that neither Roy Varble nor the Estate of Phyllis Varble can recover under the UIM provision in their Auto-Owners policy because the vehicle in which the accident occurred, Mr. Sands' Ranger, is excluded from UIM coverage under the terms of the policy. Edward Varble, as the guardian of Roy Varble, has filed a cross-motion for summary judgment contending that the "regular use" exclusion does not exclude Roy Varble from recovery under the UIM or, in the alternative, that the exclusion is against public policy and should be removed as a reason for denying UIM coverage.

The underinsured motorist coverage found in the Varbles' Auto-Owners insurance policy states that Auto-Owners "will pay compensatory damages . . . [Roy Varble is] legally entitled to recover from the owner or operator of any underinsured automobile because of bodily injury [Roy Varble] sustain[s][.]" Pl.'s Compl. Ex. 1 at 44. The terms of the policy specifically exclude automobiles "owned or leased by, furnished to or available for regular use of [Roy Varble] or anyone living with [Roy Varble] from the definition of "underinsured automobile." Id. at 43.

The parties have devoted a great deal of time to the issue of whether the Ranger was available for the regular use of Phyllis or Roy. However, a simple reading of the relevant provision indicates that any vehicle owned by anyone living with Roy Varble does not qualify as an "underinsured automobile" under the policy. It is undisputed that the Ranger was owned by Mr. Sands. It is further undisputed that Mr. Sands resided with Roy Varble for the three and one-half half years leading up to the accident on January 7, 2009. Therefore, the terms of Roy Varble's Auto-

Owners policy exclude any UIM coverage for the injuries he suffered in that accident, so long as the "regular use" exclusion applies.

Varble contends that the "regular use" exclusion is against public policy and should be invalidated. He relies upon the Kentucky Supreme Court decision in Lewis v. West American Insur. Co., which held family or household exclusions in liability insurance policies invalid and unenforceable as violative of public policy.[2] 927 S.W.2d 829 (Ky. 1996). The family exclusions at issue in Lewis were provisions found in "the insurance policy [that] limit[ed] liability coverage to the $25,000 statutory minimum where the injured person [was] the named insured or a member of a named insured's family, regardless of who [was] driving." Id. at 830. The Kentucky Supreme Court found that the proffered rationale for the family exclusion in general liability policies was to prevent family members from colluding "to obtain greater compensation for an injured family member than that person rightfully deserve[d]." Id. The court found that the possibility of such collusion did not justify the fact that the "[f]amily exclusions were injurious to a substantial segment of the citizens of our Commonwealth[,]" and held that the family exclusion clauses were violative of public policy and unenforceable. Id. at 836.

In his attempt to have the "regular use" exclusion declared against public policy, Varble repeatedly references the fact that there is no threat of collusion in claiming UIM coverage. However, the justification behind the "regular use" exclusion is not fear of collusion. In Murphy

---

[2] The other cases that Varble relies upon, namely Dupin v. Adkins, 17 S.W.3d 538 (Ky. Ct. App. 2000) and Williams v. State Farm Mutual Automobile Insur. Co., 225 S.W.3d 913 (Ky. 2008), found the UIM coverage applied to the insureds, but did so by examining the terms of the policy. In these decision, coverage was not premised on the exclusions being declared violative of public policy and invalid. To the extent that Varble claims these cases support a finding that "regular use" exclusions are against public policy, the Court disagrees.

4

v. Kentucky Farm Bureau Mutual Insur. Co., the Kentucky Court of Appeals examined a "regular use" exclusion that stated that an underinsured motor vehicle "does not include any vehicle . . . owned by or furnished or available for the regular use of you or any 'family member.'" 116 S.W.3d 500, 501 (Ky. Ct. App. 2003). The court found that unlike the family exclusions at issue in Lewis, "[t]he justification for the regular-use exclusion is not the possibility of collusion, but rather the fact that the insured or another family member has control over how much liability coverage is purchased." Id. at 503. This justification was recently echoed in Burton v. Kentucky Farm Bureau Mutual Insur. Co., where the Kentucky Court of Appeals cited Murphy and stated that "[r]egular use exclusions from UIM coverage have been repeatedly upheld as not being against public policy." 356 S.W.3d 474, 476 (Ky. Ct. App. 2010).

Although the language of the Auto-Owners "regular use" exclusion differs slightly from the language found in the exclusions in Murphy and Burton, the result is the same. While the elderly step-father Roy Varble did not have control over how much liability coverage he had in this accident, his care-taker and family member, Randy Sands, did have such control because Mr. Sands owned and insured the Ranger in which Roy Varble was riding. See Murphy, 116 S.W.3d at 503 (upholding the "regular use" exclusion and finding that "[w]hile [the minor son] did not have control over how much liability coverage he had in this accident, his mother did have such control because she owned and insured the car in which he was riding.") Varble's public policy argument has been made several times before and rejected each time by numerous Kentucky courts. The Court likewise finds his argument unpersuasive.

The Court finds that Roy Varble is not entitled to UIM coverage under the terms of the Auto-Owners' policy and that the exclusion, as applied to the facts in this case, is not against public

policy. The Court further finds that this conclusion is equally applicable to the Estate of Phyllis Varble. It is undisputed that the Ranger, in which she was killed, was owned by her son, Mr. Sands, and that she lived with Mr. Sands for the three and one-half years leading up to the accident. Therefore, under the terms of the Auto-Owners policy, the Estate is not entitled to UIM coverage.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment [DN 26] is **GRANTED.**

**IT IS FURTHER ORDERED THAT** Defendant Edward H. Varble's Cross Motion for Summary Judgment [DN 28] is **DENIED**.

cc: counsel of record